IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ZACK PRESTON LINDSEY, JR.   *

    Plaintiff   *

    vs.   *   CIVIL ACTION NO. MJG-10-2148

UNITED STATES OF AMERICA   *

    Defendant   *

\*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant's Motion to Dismiss, or alternatively, for Summary Judgment [Document 8], Plaintiff's Motion for Summary Judgment [Document 12], and the materials submitted relating thereto. The Court has held a hearing and has had the benefit of the arguments of counsel.

I. BACKGROUND

Cynthia L. Lindsey, wife of Plaintiff Zack Preston Lindsey, Jr. ("Lindsey"), was injured while she was working in her capacity as a federal employee due to the alleged negligence of Chimes International, Ltd. ("Chimes").[1] She required surgery and died as a result of a pulmonary embolism post-surgery. Following the accident, Lindsey (and his wife) received payments

---

[1] Chimes was a cleaning company that allegedly negligently caused the accident by failing to put down floor mats on a wet marble floor in the building lobby.

under the Federal Employment Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193 (2006).[2]

On January 4, 2008, Lindsey filed a lawsuit against Chimes. The case was settled in October 2009 for $475,000.00. As discussed herein, Lindsey was required to "share" the recovery with the Government to, in effect, partially compensate for the FECA payments.

The parties agree that, as of September 11, 2009, Lindsey and his wife had received $89,379.49[3] in FECA benefits. Lindsey (through counsel) and a Government employee utilized a formula provided by the Office of Workers' Compensation Programs ("OWCP") Form 1108, and determined (erroneously) that Lindsey had to refund only $55,571.47 and the Government was not entitled to withhold any amount from future FECA benefits. In fact, the correct application of the formula would require Lindsey to refund $59,586.33 and entitled the Government to withhold $69,977.69 from future Wrongful Death benefits paid under the FECA.

In this case, Lindsey seeks to have the Court require the Government to proceed pursuant to the original erroneous formula

---

[2] The FECA provides that "[t]he United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102(a). All § references herein are to 5 U.S.C. unless otherwise indicated.
[3] The amount of $89,379.49 consisted of $4,691.05 in medical expenses paid and $84,688.44 in pay and survival benefits.

2

calculation.  The parties have presented cross-motions for summary judgment.[4]  As discussed herein, there are no genuine issues of material fact and the Government is entitled to summary judgment.[5]

II.  STATUTORY FRAMEWORK

The FECA provides that "[t]he United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty."  5 U.S.C. § 8102(a).  Section 8103 permits a government employee to recover certain medical expenses for care they receive as a result of injuries sustained while in the performance of their duties.  5 U.S.C. § 8103.

If an employee becomes disabled because of injuries sustained while on the job, FECA provides benefits to the employee as a percentage of the employee's monthly wages and as adjusted by the amount of disability.  5 U.S.C. §§ 8105-8106.  FECA also provides for survivor benefits to be paid to the widow

---

[4]  The Government has also sought dismissal under Rule 12(b)(6) but, inasmuch as the parties have submitted materials outside the Complaint, that motion is subsumed by the Motion for Summary Judgment.  Rule 12(b)(6).

[5]  A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).

3

or widower and/or other family members of a federal employee who dies following an injury sustained in the performance of official duties. 5 U.S.C. § 8133.

Generally, the United States pays FECA benefits immediately when qualifying conditions are met. However, when a third party is found to be independently liable for the federal employee's injury, the burden of compensation shifts to the third party. 5 U.S.C. § 8131(a). If the FECA beneficiary does not assign a claim against a third party to the United States but instead prosecutes an action on his own behalf and subsequently obtains a recovery either through judgment or settlement, then under 5 U.S.C. § 8132, the United States has a statutory right to reimbursement according to the amount of benefits paid.

Accordingly, a FECA beneficiary who receives money or other property from a settlement or judgment from a third party must refund to the United States the amount of compensation paid, and credit any surplus on future payments payable for the same injury. See id.

III. DISCUSSION

A. Jurisdiction

The Government maintains that this Court lacks subject matter jurisdiction over Lindsey's theory under 5 U.S.C. § 8129, because pursuant to 5 U.S.C. § 8145, only the Secretary of Labor

4

has an exclusive authority to determine recovery of overpayment. Moreover, according to the Government, under 5 U.S.C. § 8128(b), the judicial review of such determination is precluded, and this Court is not authorized to hear this case.

Lindsey responds that § 8129 and interpreting case law provide that federal courts have the jurisdiction to consider questions regarding overpayment. In United States v. Vetti, 681 F. Supp. 986, 991 (D. Ct. 1988), the court noted that although courts do not have the power to review questions arising from § 8128, they do have such power for questions arising under § 8129. Furthermore, disputes under § 8132 are reviewable by the courts. See generally United States v. Lorenzetti, 467 U.S. 167 (1984).

Accordingly, Court finds that it has subject matter jurisdiction in this case.

### B. The Merits

Lindsey seeks a declaratory judgment establishing that he has satisfied his FECA obligation to the United States Department of Labor by remitting a check for $55,571.47, that the Government is not entitled to withhold any amount of future FECA benefits that the Government must pay him in lump sum any previously withheld amount of survivor benefits.

Lindsey does not contend that he is entitled to prevail on a general estoppel theory.[6] Rather, Lindsey now relies upon FECA § 8129, which creates what might be viewed as "statutory estoppel" by preventing the Government from recovering an overpayment it made if certain conditions are met and it would be inequitable to require repayment or reduction of future benefits.[7]

§ 8129 provides, in pertinent part:

> (a) When an overpayment has been made to an individual . . . because of an error of fact or law, adjustment shall be made . . . by decreasing later payments to which the individual is entitled. . . .
>
> (b) Adjustment or recovery by the United States may not be made when incorrect payment has been made to an individual who is without fault and when adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

---

[6] In Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 430 (1990), the Supreme Court noted that "[t]he whole history and practice with respect to claims against the United States reveals the impossibility of an estoppel claim for money in violation of a statute." See also Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947) (stating that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.").

[7] Although Lindsey did not refer to § 8129 in the Complaint, he has requested leave to amend the Complaint if necessary to present the contention. Under the circumstances, the Court will consider the § 8129 contention as if properly raised in the Complaint.

Lindsey's contention fails at the threshold because there simply was no overpayment by the Government. The following is what occurred:

1. Prior to September 11, 2009, the Government had paid Lindsey and his wife FECA benefits totaling $87,379.49, consisting of $84,688.44 of pay and survivor benefits and $4,691.05 of medical expenses.

2. In or about October 2009, Lindsey received from Chimes (or its insurer) $475,000.00 in settlement of the negligence case, a part of which Lindsey was obligated to pay to the Government pursuant to the FECA.

3. From September 11, 2009, though May 2010, the Government continued to pay Lindsey FECA survivor benefits pending determination of Lindsey's FECA obligation to the Government.

4. A correct computation of Lindsey's FECA obligation as of September 11, 2009, would call for him to "pay" the Government from the $475,000.00 received from Chimes, a total of $129,564.02. This amount would have been "paid" by a remittance of $59,586.33 (a "refund") and by the withholding of future FECA survivor benefits (a "surplus") of $69,977.69.

5. However, in January 2010, Lindsey and the Government arrived at an erroneous computation that called for a "refund" of $55,571.47 and no "surplus."

6. In May 2010, the Government discovered the computational error, commenced withholding of Lindsey's survivor benefits to satisfy the $69,977.69 "surplus" and sought to have Lindsey pay the $4,016.86 balance due of the "refund."

Thus, there was no overpayment by the Government. The instant case is concerned only with Lindsey's paying the Government its proper share of the $475,000.00 Lindsey received from Chimes.

7

Furthermore, even if there had been an "overpayment" within the meaning of § 8129, Lindsey has by no means presented evidence adequate to support a finding that requiring him to pay what he legally owes would defeat the purpose of the FECA or would be against equity and good conscience.[8] Indeed, it would be against equity and good conscience to permit Lindsey to take advantage of a mutual computational mistake and obtain a double recovery.

V. <u>CONCLUSION</u>

For the foregoing reasons:

> 1. Defendant's Motion to Dismiss, or alternatively, for Summary Judgment [Document 8] is GRANTED IN PART.

---

[8] The Code of Federal Regulations explains the meaning of equity and good conscience:

> (a) Recovery of an overpayment is considered to be against equity and good conscience when any individual who received an overpayment would experience severe financial hardship in attempting to repay the debt.
>
> (b) Recovery of an overpayment is also considered to be against equity and good conscience when any individual, in reliance on such payments or on notice that such payments would be made, gives up a valuable right or changes his or her position for the worse. In making such a decision, OWCP does not consider the individual's current ability to repay the overpayment.

20 C.F.R. § 10.437.

2. Plaintiff's Motion for Summary Judgment [Document 12] is DENIED.

3. Judgment shall be entered by separate Order.

SO ORDERED, this Tuesday, October 04, 2011.

```
                         /s/
                   Marvin J. Garbis
              United States District Judge
```